UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MELISSA STONEBARGER, | ) | |
| INDIVIDUALLY AND AS | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF VERONICA HOGLE, | ) | |
| et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-2137-JAR-TJJ |
| | ) | |
| UNION PACIFIC CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No. 43).

Pursuant to Fed. R. Civ. P. 37, Plaintiffs ask the Court to overrule the objections of  Defendants

Union Pacific Corporation and Union Pacific Railroad Company (collectively "Union Pacific")

and order Union Pacific to produce all documents responsive to Request Numbers 41, 63, 64,

and 67 of Plaintiffs' First Requests for Production of Documents.[1]  As set forth below, Union

Pacific's objections to the discovery requests are overruled and Plaintiffs' motion is granted,

subject to the limitations specified herein.

---

[1] Plaintiffs also moved to compel Union Pacific to respond to Plaintiff Melissa Stonebarger's individual Interrogatory Number 3, and to produce documents in response to Request Numbers 2, 3, 7, 8, 11, 13, 14, 15, 18, 31, 38, 42, 49, 50, 62, 65, 68, 69, 70, and 75 of Plaintiffs' First Requests for Production of Documents.  *See* ECF No. 43-1 at 2.  The parties report that they have reached agreement with respect to those discovery issues.  *See* ECF No. 62 at 3; ECF No. 9 at 2.

I.      **Relevant Background**

Plaintiffs served their First Requests for Production of Documents on September 10, 2013. Union Pacific filed its responses and objections on November 14, 2013.[2]  After conferring with Union Pacific to resolve the issue without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Plaintiffs filed the instant Motion to Compel Discovery.

II.     **Specific Discovery Requests at Issue**

Plaintiffs request in their motion that the Court order Union Pacific to produce documents responsive to their First Requests for Production Numbers 41, 63, 64, and 67.

  **A.  Request No. 41**

Plaintiffs seek to compel Union Pacific to produce documents responsive to their First Requests for Production No. 41, which asks that Union Pacific produce "[a]ll physicals, eye tests, hearing tests, and any other health-type test, and the results of same, performed on each train crew member involved in the incident in question.  Such record to be from each person's initial date of employment to present."  Union Pacific asserted the following objection:

> Defendant objects to this request for the reason it is vague and ambiguous, facially overly broad and unduly burdensome, is not reasonably limited in time or scope, seeks private and confidential information concerning Defendant's employees, it violates certain HIPPA laws, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[3]

  **B.  Request No. 63**

Plaintiffs also seek to compel Union Pacific to produce documents responsive to their First Requests for Production No. 63, which asks that Union Pacific produce "a copy of any and all

---

[2] *See* ECF No. 22.

[3] ECF No. 43-3 at 19.

reports of any other railroad crossing accidents or train accidents which took place in Brown County, Kansas in the past five (5) years."  Union Pacific asserted the following objection:

> Defendant objects to this request for the reason it is facially overly broad and unduly burdensome, is not reasonably limited in time or scope, seeks documents protected by 49 U.S.C. § 20903 and 23 U.S.C. § 409, seeks documents protected by attorney/client and work product privileges, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[4]

### C.  Request No. 64

Plaintiffs also seek to compel Union Pacific to produce documents responsive to their First Requests for Production No. 64, which asks that Union Pacific produce "a copy of any and all reports of any other railroad crossing accidents or train accidents which took place in Hiawatha, Kansas in the past five (5) years."  Union Pacific asserted the following objection:

> Defendant objects to this request for the reason it is overly broad and unduly burdensome, is not reasonably limited in time or scope, seeks documents protected by 49 U.S.C. § 20903, seeks documents protected by attorney/client and work product privileges, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[5]

### D.  Request No. 67

Finally, Plaintiffs seek to compel Union Pacific to produce documents responsive to their First Requests for Production No. 67, which asks that Union Pacific produce "a copy of each and every version of your accident investigation guidelines manual as discussed in the July 11, 2004 New York Times article, a copy of which is attached for your reference."  Union Pacific asserted the following objection:

> Defendant objects to this request for the reason it is facially overly broad and unduly burdensome, seeks documents protected by the attorney/client and work

---

[4] ECF No. 43-3 at 24.

[5] ECF No. 43-3 at 25-26.

product privileges, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**III.    Plaintiffs' Arguments**

A Union Pacific freight train collided with a truck driven by Therman Turner in which Veronica Hogle was a passenger, resulting in the death of both occupants of the truck.  Plaintiffs seek to compel Union Pacific to produce the health records of the train crew, accident reports from other railroad crossing accidents within the city and county where this accident occurred, and Union Pacific's accident investigations guidelines manual.  Plaintiffs assert that their requests for health records are not vague and ambiguous or overbroad and that they are properly limited in time and scope.  Plaintiffs seek health related test results only for the crew of the train involved in the collision, in an effort to determine whether those individuals were physically and mentally capable of safely operating the train and seeing and avoiding the truck.  Plaintiffs also point out that the protective order in this case prevents any privacy and confidentiality concerns because the information cannot be revealed to anyone other than Plaintiffs' counsel and counsel's representatives.  According to Plaintiffs, Union Pacific has asked for the same information (presumably as to the decedents) and claims that it is relevant, and Plaintiffs assert that there is no logical distinction between their mirror requests.

With respect to their requests for reports of railroad crossing or train accidents in Brown County and Hiawatha, Kansas, in the last five years, Plaintiffs contend that the temporal and geographical scope of the request is reasonable.  Plaintiffs have also narrowed the request further by limiting it to instances of vehicular crossings which are (1) rural, (2) cross buck only, and (3) in wooded areas.[6]  Following this further limitation, the parties agreed that the documents

---

[6]*See* ECF No. 62-3 at 3.

4

responsive to Request Nos. 63 and 64 are the following from the accident at issue: (1) RMCC report; (2) the police or law enforcement report; (3) the FRA Accident Incident Report; (4) the Manager's report; and (5) sketches/drawings of the accident scene and/or crossing at issue like the one created by Bill Herring.[7] Plaintiffs explain that these documents are relevant because they may reveal deficiencies, suggested changes, or issues regarding wooded grade crossings and line of sight issues in this rural part of Kansas. Moreover, Plaintiffs deny that they seek privileged documents, as they exclude from their request any documents which contain attorney mental impressions and/or opinions. Plaintiffs also assert that Union Pacific's refusal to produce a privilege log prevents them from being able to determine the validity of Union Pacific's claim that documents are protected from disclosure pursuant to 23 U.S.C § 409 or 49 U.S.C. § 20903.

Finally, with respect to their requests for Union Pacific's accident investigation guidelines manual, which was discussed in an article that appeared in The New York Times on July 11, 2004, Plaintiffs assert that Union Pacific can readily identify the manual(s) in question. Plaintiffs contend that producing the requested documents is not putting undue burden on Union Pacific as it has produced them in other lawsuits. Plaintiffs assert that the manual(s) are highly relevant as they may reveal Union Pacific's investigation practices over time and allow Plaintiffs to compare them to and analyze current practices, which in turn is relevant to the safety of the railroad crossing at issue and Union Pacific's handling of the investigation of this accident. Plaintiffs deny that they seek documents which reveal attorney mental impressions or opinions, and therefore the requested documents are not protected by attorney-client privilege or work product doctrine.

---

[7] *See id.*

**IV.    Defendants' General Arguments**

In the response to Plaintiffs' motion, Union Pacific makes a number of arguments.  First, Union Pacific contends that Plaintiffs have not brought into play Union Pacific's objections by failing to address the substance of the objections.  The Court rejects this argument.  Although Plaintiffs' motion does not go into great detail, Plaintiffs attach thereto a memorandum which sets forth each discovery request, Union Pacific's response/objection, and Plaintiffs' explanation as to how the objections are improper.[8]  Moreover, the correspondence attached to the parties' briefs reveals that they communicated their respective positions to each other.

Second, Defendants repeat various general objections, namely that the requests at issue are facially overbroad, unduly burdensome, and fail to identify with reasonable particularity the documents or information sought.  Defendants offer no evidence and submit no affidavits to support their conclusory statements with respect to Request Nos. 63, 64, and 67, instead asserting generally that (1) "each and every version" and "'any and all' reports" are per se overly broad and require "mental gymnastics;" (2) providing any and all versions of Union Pacific's accident investigations guidelines manual from 2004 to the present would be "daunting, if not impossible;" (3) seeking accident reports from the past five years is on its face an improperly overbroad temporal limit; and (4) seeking those reports for the past five years for Hiawatha and Brown County "would be overwhelming."[9]

Such boilerplate objections, standing alone, do not constitute a successful objection to a discovery request.[10]  The Court will not consider the objections unless the objecting party shows

---

[8] *See* ECF No. 43-3.

[9] ECF No. 62 at 7-9.

[10] *See Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 518-19 (D. Kan. 2010).

"specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad [or] burdensome . . . by submitting affidavits or offering evidence revealing the nature of the burden."[11]  Accordingly, the Court overrules Union Pacific's objections that Plaintiffs' Request Nos. 63, 64, and 67 are facially overbroad, unduly burdensome, and fail to identify with reasonable particularity the documents or information sought.

With respect to Request No. 41, Union Pacific complains that a request for health information for the train crew's entire period of employment violates the requirement that Plaintiffs must describe the documents they seek with reasonable particularity.[12]  The Court also over-rules Union Pacific's boilerplate objections to this request, but does agree that the request should be limited in time.  Accordingly, the Court will order Union Pacific to produce only those documents responsive to Plaintiffs' Request No. 41 which were created or relate to examinations performed *within five years* preceding the date of the accident.

## V.      Whether the Discovery Sought is Relevant and Discoverable

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.  It provides that the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[13]  Relevancy is broadly construed, and a request for discovery

---

[11] *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7, 2005).

[12] *See* Fed. R. Civ. P. 34(b)(1).

[13] Fed. R. Civ. P. 26(b)(1).

should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party."[14]  Furthermore, "the touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'"[15]  "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."[16]

When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[17]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the request's relevancy.[18]  Relevancy determinations are generally made on a case-by-case basis.[19]

Addressing Plaintiffs' Request Nos. 63 and 64, Union Pacific asserts that reports of other accidents at its railroad crossings would be inadmissible at trial.  Regardless of whether the

---

[14] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

[15] *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

[16] Fed. R. Civ. P. 26(b)(1).

[17] *Gen. Elect. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[18] *McBride*, 250 F.R.D. at 586.

[19] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate,* No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

Case 2:13-cv-02137-JAR   Document 81   Filed 07/21/14   Page 9 of 15

assertion is true, it is not the standard by which the Court determines discoverability.  Instead, as set forth above, the Court must deem Plaintiffs' requests relevant unless they seek information that can have no possible bearing on Plaintiffs' claims or Union Pacific's defenses.  Union Pacific incorrectly argues that Plaintiffs "have not demonstrated any potential relevance of information to be derived from reports of incidents in a remote time or place, which involve different sight-lines, signalization, track geometry, weather conditions, lighting, road conditions, and different train crews."[20]  Plaintiffs limited their requests to accidents within Hiawatha and Brown County that occurred in the last five years, which is hardly remote in time or place. Plaintiffs have explained that the reports they seek may reveal deficiencies, suggested changes, or other issues regarding wooded grade crossings and line of sight issues.  Finally, the parties agreed on five specific categories of documents in Union Pacific's possession that are responsive to Request Nos. 63 and 64.  Union Pacific offers no persuasive argument that such documents are irrelevant.

As for Request No. 67, Union Pacific contends that Plaintiffs cannot demonstrate the relevancy of a 2004 accident investigation manual and subsequent versions of the manual.[21] Although the request is not clearly written, Plaintiffs appear to be seeking earlier/previous (not subsequent) versions of the 2004 manual which are described and referred to in The New York Times article dated July 11, 2004.[22]  Plaintiffs explain that the manuals they seek are relevant to

---

[20] ECF No. 62 at 11.

[21] *See* ECF No. 62-3 at 3 (guidelines manuals from 2004 to present "are not relevant to this case, if for no other reason than the passage of time").

[22] ECF No. 43-3 at 28 ("[T]his request . . . is limited to UP's *previous* accident investigation manuals as mentioned in the July 11, 2004 New York Times article discussing the protocol of how UP goes about investigating a crossing accident." (emphasis added)).

whether Union Pacific's accident investigation customs and practices changed over time and whether its investigations are accurately and meaningfully conducted.  Defendants' objection fails to address the actual scope and basis for the request.  The Court agrees that the request is facially relevant and directs Union Pacific to produce all versions of the "Accident Investigation Guidelines" manuals in effect from the beginning of Michael H. Walsh's tenure as CEO of Union Pacific until the date of the July 11, 2004, New York Times article.  While this time period is many years ago, Plaintiffs have demonstrated that the request could lead to the discovery of admissible evidence.

Union Pacific also argues that the referenced New York Times' article is inadmissible hearsay and the Court should rule it excluded.  The admissibility of such document is not within the scope of the motion and the Court declines to address it.[23]  The Court finds that Request No. 67, as limited here, seeks relevant documents.

Finally, Union Pacific asserts that there is "no evidence of impairment or health problems on the part of any member of the non-party train crew involved in this accident,"[24] and that Request No. 41 therefore seeks irrelevant documents.  As Plaintiffs point out, these health records may help determine whether any members of the crew might have had physical or mental problems which could have affected their ability to safely operate the train or to see the

---

[23] One of Union Pacific's arguments as to the inadmissibility of the article is that it is barred by Federal Rule of Evidence 404(a) as character evidence.  The rule applies to "a person's character or trait," and Union Pacific offers no authority for a finding that a corporation is covered by the rule.  *See* Fed. R. Evid. 404(a).

[24] ECF No. 62 at 11.

vehicle in time to take evasive action.  The information Plaintiffs seek in Request No. 41 is clearly relevant.[25]

## VI.    Whether the Discovery Sought is Privileged

Union Pacific objects to producing documents responsive to Request Nos. 63, 64, and 67 on the grounds that they are protected by attorney-client and work product privileges.  With respect to accident reports, Union Pacific asserts that the requests would include reports prepared by in-house counsel, outside counsel, and agents for both, prepared in anticipation of litigation and/or for the purpose of increasing and improving crossing safety.  As for its accident investigation manual, Union Pacific contends that the request "raises attorney-client and work product issues as well."[26]

When a party withholds information otherwise discoverable by claiming privilege or the protection of the work-product doctrine – as Union Pacific has done – the party must expressly claim the privilege and "describe the nature of the documents . . . not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[27]  The claim of privilege is usually in the form of a privilege log.[28]

---

[25] *See Stark-Romero v. Nat'l RR Passenger Co.*, 276 F.R.D. 531, 535-36 (D. N.M. 2011) (ordering railroad to produce medical records of train crew in wrongful death action arising from railroad crossing accident).

[26] ECF No. 62 at 12.

[27] Fed. R. Civ. P. 26(b)(5)(A).

[28] *Kear v. Kohl's Dep't Stores, Inc.*, No. 12-cv-1235-JAR-KGG, 2013 WL 3088922, at *2 (D. Kan. June 18, 2013).

Plaintiffs requested that Union Pacific prepare a privilege log pursuant to Fed. R. Civ. P. 26(b)(5), but Union Pacific asserts that doing so would "impose an undue burden and require monumental efforts" because the requests are facially overbroad, unduly burdensome, and not stated with reasonable particularity.[29]  The Court has overruled those objections, and the documents Union Pacific is withholding are therefore "otherwise discoverable."[30]  Accordingly, the Court will order Union Pacific to produce a privilege log in response to Request Nos. 63, 64, and 67.[31]

## VII.    Whether Health Test Results are Protected under HIPAA

Union Pacific objected to producing the results of physical and other health tests performed on train crew members on the basis that the request "violates certain HIPAA laws."[32]  Union Pacific asserts that it is prohibited from disclosing this information pursuant to the Health Information Portability and Accountability Act ("HIPAA"),[33] which prohibits unauthorized disclosures or misuse of protected health information by protected entities.  As an employer of the individuals whose health information Plaintiffs seek, Union Pacific is not subject to HIPAA.

---

[29] *Id.* at 13.

[30] Fed. R. Civ. P. 26(b)(5)(A).

[31] This requirement applies to all of Union Pacific's privilege claims.  The Court cautions that any claim of privilege under 23 U.S.C. § 409 will be narrowly construed and, on first glance, would not encompass the documents Plaintiffs seek in Request Nos. 63 and 64.  *See Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 143-46 (2003) (Section 409 prohibits only disclosure of information compiled or collected for engineering surveys required by Hazard Elimination Program, 23 U.S.C. § 152); *Powers v. CSX Transp., Inc.*, 177 F. Supp. 2d 1276, 1277-80 (S.D. Ala. 2001) (Section 409 shields from disclosure otherwise protected information which relates only to the crossing at issue).

[32] ECF No. 43-3 at 19.

[33] 42 U.S.C. §§ 1320d to 1320d-8.

"There are no federal statutes generally prohibiting the release of medical records by an employer. . . .   The privacy rule of [HIPAA] does not directly regulate employers or other plan sponsors that are not HIPAA covered entities."[34]   In order to be subject to HIPAA, the entity must be:  (1) a health plan; (2) a health care clearinghouse; or (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA.[35]   Even if Union Pacific were a covered entity under HIPAA, it would be permitted to disclose its employees' health information to Plaintiffs in response to discovery requests in this case where a qualifying protective order is in place.[36]   Accordingly, the Court overrules Union Pacific's objections to Request No. 41 on the basis that the requested information is protected by HIPAA.

For the reasons stated above, the Court overrules in their entirety Union Pacific's objections to Plaintiffs' First Requests for Production of Documents Numbers 41, 63, 64, and 67.

## VIII.   Sanctions

Plaintiffs have not requested that the Court award them their costs and attorney's fees associated with filing their Motion to Compel. Because the Court has overruled Union Pacific's objections and is granting Plaintiffs' motion, the Court must award reasonable expenses unless the Court finds that Plaintiffs failed to make a good faith effort to obtain the discovery without court action, that Union Pacific's objections are substantially justified, or that other

---

[34] *Harris v. Vescom Corp.*, No. CV406-291, 2007 WL 1810159, at *2 (S.D. Ga. July 10, 2007).

[35] 45 C.F.R. § 160.103.

[36] *See* 45 C.F.R § 164.512(e)(1)(ii)(B); (e)(1)(v).

13

circumstances make an award of expenses unjust.[37]  The Court finds that, under the
circumstances to date, an award of expenses would be unjust.  The parties engaged in a series of
communications during which they whittled down from 25 to four the number of discovery
requests at issue.  Both parties appear to have acted in good faith.  In addition, the Court has
modified and limited two of the discovery requests.  Finally, although the Court has ordered
Union Pacific to produce a privilege log, the Court will not sanction Union Pacific for failing to
produce documents which might properly be protected by privilege.

> **IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion to Compel Discovery (ECF
No. 43) is **GRANTED**.  Union Pacific shall provide to Plaintiffs a privilege log which provides
sufficient information to allow Plaintiffs to assess the claimed privileges **within fifteen (15)
days of the date of this Memorandum and Order.**

> **IT IS FURTHER ORDERED THAT** Union Pacific shall provide to Plaintiff those
documents not claimed as privileged which are responsive to Plaintiffs' First Requests for
Production of Documents Numbers 41 (as modified and limited to the five (5) years preceding
the date of the accident at issue), 63, 64, and 67 (as modified and limited to all Accident
Investigation Guideline manuals in effect from the beginning of Michael Nelson's tenure as CEO
of Union Pacific until the July 11, 20014, New York Times article) and further subject to
limitations previously agreed to by the parties, **within fifteen (15) days of the date of this
Memorandum and Order.**

---

[37] Fed. R. Civ. P. 37(a)(5)(A).

**IT IS SO ORDERED.**

Dated this 21st day of July, 2014 at Kansas City, Kansas.

s/ Teresa J. James
Teresa J. James
United States Magistrate Judge
