## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELISSA STONEBARGER, et al.,    )
    )
        Plaintiffs,    )
    )
vs.    )
    )    **Case No. 13-2137-JAR-TJJ**
UNION PACIFIC RAILROAD    )
COMPANY,    )
    )
        Defendant.    )
_____   )

### MEMORANDUM AND ORDER

This matter is presently before the Court upon Defendant Union Pacific Railroad Company's ("Union Pacific") Motion to Review the Magistrate's Orders dated July 21 and October 16, 2014 (Doc. 133). Having carefully reviewed the arguments of the parties, the Court is now prepared to rule.[1] For the reasons explained in detail below, Union Pacific's Motion is denied.

## I.      Background

Plaintiffs bring this wrongful death action seeking to recover damages arising out of a collision between an automobile and a train that occurred at a public railroad grade crossing in rural Brown County, Kansas, on October 29, 2012. During discovery, Plaintiffs submitted a Request for Production No. 67, asking that Union Pacific "produce a copy of each and every version of your accident investigation guidelines manual as discussed in the July 11, 2004 *New York Times* article, a copy of which is attached for your reference."[2] Union Pacific asserted the

---

[1] In light of the Court's conclusion that this matter may be decided on the basis of the parties' submissions, the Court denies Defendant's request for oral argument.

[2] Doc. 43-3 at 28.

following objection:

> Defendant objects to this request for the reason it is facially overly
> broad and unduly burdensome, seeks documents protected by the
> attorney/client and work product privileges, and seeks documents
> that are irrelevant and not reasonably calculated to lead to the
> discovery of admissible evidence.

Plaintiffs moved to compel, asserting that Union Pacific could readily identify the manuals in question, which were discussed in the *New York Times* article; that producing the manuals did not put an undue burden on Union Pacific as it had produced them in other lawsuits; that the manuals are highly relevant as they may reveal Union Pacific's investigation practices over time and allow Plaintiffs to compare them to and analyze current practices, which in turn is relevant to the safety of the railroad crossing at issue and Union Pacific's handling of the investigation of this accident; and that they do not seek documents that are protected by the attorney-client privilege or work product doctrine.[3]

Judge James overruled Union Pacific's objections, and ordered Union Pacific to produce all versions of the "Accident Investigation Guidelines" manuals in effect from the beginning of Michael H. Walsh's tenure as CEO of Union Pacific until the date of the July 11, 2004, *New York Times* article. Judge James noted that Union Pacific repeated various general objections, "namely that the requests at issue are facially overbroad, unduly burdensome, and fail to identify with reasonable particularity the documents or information sought."[4] Judge James stated that Union Pacific offered no evidence or affidavits to support its conclusory statements with respect to Request No. 67, instead asserting generally that providing any and all versions of Union

---

[3]Doc. 81 at 5.

[4]*Id*. at 6.

Pacific's accident investigations guidelines manual from 2004 to the present would be "daunting, if not impossible."[5]  Judge James held that "[s]uch boilerplate objections, standing alone, do not constitute a successful objection to a discovery request."[6]  The court went on to state that it will not consider the objections unless the objecting party shows "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad [or] burdensome . . . by submitting affidavits or offering evidence revealing the nature of the burden."[7]

Judge James further agreed with Plaintiffs that the request is facially relevant to whether Union Pacific's accident investigation customs and practices changed over time and whether its investigations are accurately and meaningfully conducted.[8]  The court noted that, once again, Union Pacific focused its objection on the relevancy of a 2004 accident investigation manual and subsequent versions of the manual to present, when Plaintiffs' Request No. 67 was seeking earlier or previous versions of the 2004 manual that were described and referred to in the 2004 *New York Times* article.[9]

Union Pacific moved to reconsider, urging Judge James to sustain its objections to producing documents pursuant to Request No. 67, attaching an affidavit of James Foxx, Regional

---

[5]*Id*. The court also discussed objections to other requests for production, not at issue here.

[6]*Id*. (citing *Design Basics, LLC v. Strawn*, 271 F.R.D. 513, 518–19 (D. Kan. 2010)).

[7]*Id*. at 6–7 (quoting *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7, 2005)).

[8]*Id*. at 9–10.

[9]*Id*. at 9.

Director of Risk Management.[10]   Union Pacific also requested the court to stay discovery as it pertains to Request No. 67 pending this Court's ruling on its summary judgment motion.   In denying Union Pacific's request for reconsideration, Judge James noted that Union Pacific did not contend that an intervening change in controlling law supports its motion, but rather, focused its argument on preventing manifest injustice that it claimed would result if forced to comply with the court's order.[11]   Judge James held that Union Pacific asserted both that the court should consider new evidence and denied that such evidence exists, which amounted to a request that the court consider new arguments.[12]   Specifically, Union Pacific portrayed Request No. 67 as being "unlimited in temporal scope" until Judge James intervened by modifying and limiting the request.[13]   According to Union Pacific, it "had no ability to respond with specific evidence or affidavits" to support its objections because on its face, Request No. 67 could have extended "all the way back to UP's inception in 1862."[14]   Union Pacific also asserted that "Plaintiffs consistently refused to provide any limitation."[15]   Judge James rejected the premise of Union Pacific's argument, noting that Plaintiffs requested Union Pacific to produce "each and every version of your accident investigation guidelines manual **as discussed in the July 11, 2004 New York Times article**," a copy of which was attached to their request.[16]   Judge James explained

---

[10]Doc. 104.

[11]Doc. 123 at 2.

[12]*Id*. at 3.

[13]*Id*.

[14]*Id*.

[15]*Id*.

[16]*Id*. at 3–4 (emphasis in original).

that

> [t]he Court did not change Plaintiffs' request or give it temporal
> scope; instead, the Court spelled out the exact discussion from the
> newspaper article which was in and of itself quite explicit. The
> article described a new philosophy that Michael H. Walsh brought
> to UP from the mid-1980's until the early 1990's, and stated that
> the new philosophy "was embodied in a company manual,
> 'Accident Investigation Guidelines.'"  While Defendant may have
> chosen to interpret the request as seeking its accident investigation
> guidelines manuals since 2004, Defendant points to no evidence
> that Plaintiffs were responsible for that interpretation. . . . Nor is
> there evidence to support Defendant's assertion that "Plaintiffs
> consistently refus[ed] to narrow the scope of Request No. 67 to
> some reasonable period of time."  In fact, Defendant points to no
> instance in which it asked Plaintiffs to narrow the temporal scope
> of the request.[17]

More troubling to Judge James was Union Pacific's position that the manual continued to

exist after 2004 to the present, in the face of the parties' submissions that in 2003 Union Pacific

stopped producing any version of the manual Plaintiffs seek.[18]  While much of Union Pacific's

argument arose from its professed inability to comply with the request because of the "vast time

frame it covered, Request No. 67 was well within Defendant's ability to comprehend."[19]  Judge

James stressed that it was Union Pacific's choice to make "boilerplate objections" to producing

the documents, and that it had presented no evidence or arguments that it could have made in

response to Plaintiffs' motion to compel.[20]  The court did not find any clear error to correct or

---

[17]*Id.* at 4.

[18]*Id.*  at n. 19.  Judge James noted that in the affidavit attached to Union Pacific's motion, the Regional Director of Risk Management states that Union Pacific "has not used any version of its 'Accident Investigation Guidelines' that may have been in effect from the mid-1980's to July 2004 for nearly a decade."  His continuous reference to the document in the past tense is consistent with the remark in the *New York Times* article the Union Pacific took the manual out of service in 2003.

[19]*Id.* at 4–5.

[20]*Id.* at 5.

that a need exists to prevent manifest injustice.[21]  Finally, the court declined to stay enforcement

of the discovery order until this Court ruled on a separately pending Motion for Summary

Judgment, and directed Union Pacific to provide to Plaintiffs a privilege log regarding

information in Request No. 67.[22]

## II.    Discussion

Fed. R. Civ. P. 72(a) allows a party to provide specific, written objections to a magistrate

judge's nondispositive order.  The court does not conduct a de novo review; rather, it applies a

more deferential standard under which the moving party must show that the magistrate judge's

order is "clearly erroneous or contrary to law."[23]  The court must affirm the magistrate judge's

order unless the entire evidence leaves it "'with the definite and firm conviction that a mistake

has been committed.'"[24] A magistrate judge's order is contrary to law if it "fails to apply or

misapplies relevant statutes, case law or rules of procedure."[25]

### *Relevance*

Fed. R. Civ. P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not

privileged, that is relevant to the claim or defense of any party. . . Relevant information need not

be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery

---

[21]*Id.*

[22]*Id.*

[23]Fed. R. Civ. P. 72(a); *see Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D. Kan. 1997).

[24]*Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) (district court will generally defer to magistrate judge and overrule only for a clear abuse of discretion).

[25]*Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 13, 2011) (quotation omitted).

of admissible evidence." As such, the requested information must be both nonprivileged and relevant to be discoverable. "'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence."[26] "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action."[27] Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action."[28] The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the court will not require the respondent to produce the evidence.[29]

In this case, Request No. 67 is relevant on its face. This case is a wrongful death action involving an accident between a truck and a train, and accident investigation manuals would be relevant to an investigation of that accident. In their motion to compel, Plaintiffs explain that the manuals they seek are relevant to whether Union Pacific's accident investigation customs and practices changed over time and whether its investigations are accurately and meaningfully conducted. Even if the evidentiary value is slight, this meets the low threshold established by rule 26. Thus, Union Pacific bears the burden of showing the evidence is outside the scope of

---

[26]*Teichgraeber v. Mem'l Union Corp. of Emporia St. Univ.*, 932 F. Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).

[27]*Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

[28]*Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D. Kan. 1991), appeal denied, 1991 WL 60514 (D. Kan. Mar. 29, 1991).

[29]*Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan. 1995).

rule 26(b)(1).[30]

Union Pacific argues that because this is not an accident investigation case, and there are

no claims that the underlying accident was improperly investigated or that any evidence was

hidden or destroyed, the request is beyond the scope of discovery as set forth in Rule 26.  The

Court disagrees.  As Plaintiffs note, Union Pacific is alleging that the driver of the vehicle was

negligent and is solely responsible for the accident.  Union Pacific also denies the crossing at

issue was unreasonably dangerous or had any sight restrictions due to trees and vegetation.

Plaintiffs seek to review the manuals to compare how Union Pacific documented this accident

compared to the investigation practices that were implemented over the years, and argue that this

ties directly into Union Pacific's defenses.  Judge James' finding of relevancy given these facts

and after reviewing the *New York Times* article does not rise to the level of clearly erroneous or

contrary to law.  In so ruling, the Court notes that the issue of the manuals' relevance appears

better suited for a motion *in limine*, and thus Union Pacific's objection is overruled without

prejudice to raise relevance and prejudice arguments at that time.

### *Overly Broad/Unduly Burdensome*

Once the low burden of relevance is established, the legal burden regarding the defense

of a motion to compel resides with the party opposing the discovery request.[31]

Union Pacific argues that because it objected that Plaintiffs' Request No. 67 was "facially

overly broad and unduly burdensome," it was relieved of the burden to support its objection and

---

[30]*Millennium Mktg. Grp., Ltd. v. Simonton Bldg. Prods., Inc.*, No. 08-2198, 2009 WL 2407723, at *8 (D. Kan. Aug. 4, 2009)

[31]*See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).

that it was clear error and an abuse of discretion for Judge James to refuse to consider its affidavit submitted with its request for reconsideration.  The Court disagrees.  Union Pacific correctly observes that this court has held on several occasions that unless the request is overly broad on its face, the party resisting discovery has the burden to support the objection.[32]  A request may be overly broad on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[33]  A request seeking documents "pertaining to" or "concerning" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request."[34]  When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.[35]  For example, the court has held a request overbroad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" the lawsuit and the eleven plaintiffs and their EEOC charges;[36] where a request in a breach of contract case sought documents that referred to or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person

---

[32]*See, e.g.*, *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534 at *1–2 (D. Kan. Jan. 7, 2005); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 686 (D. Kan. 2000) (citations omitted).

[33]*Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658–59 (D. Kan. 2006) (citing cases) (quoting *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)).

[34]*Id.*

[35]*Id.*

[36]*Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003).

regarding termination of the contract;[37] and where a request sought "all documents concerning plaintiff."[38]

Applying these standards, Judge James did not clearly err in determining Plaintiffs' Request No. 67 was not so all-encompassing as to make it overly broad or unduly burdensome on its face.  While the request uses broad language, its breadth is sufficiently narrowed by other language, and is reasonably interpreted to seek the accident investigation manuals referred to in the 2004 *New York Times* article.  That article describes a philosophy that CEO Michael Walsh brought to Union Pacific from the mid-1980's until the 1990's, and stated that the new philosophy "was embodied in a company manual, 'Accident Investigation Guidelines.'"[39]  The article goes on to state that after Walsh left the company in August 1991, Union Pacific issued a new manual that changed the focus of accident investigations, and described portions of the revised manual.[40] Thus, the request is reasonably interpreted to seek the investigation manuals referenced in the article that were used by Union Pacific during Walsh's tenure through the date of the article.  Because the request is not facially overbroad or unduly burdensome, Union Pacific was required to show specifically how the request was overly broad or unduly burdensome.  Union Pacific made no such showing and Judge James' decision to overrule its objections on this basis was neither clearly erroneous nor contrary to law.

Nevertheless, Union Pacific next argues that when the court overruled its objection, it

---

[37]*Western Res. v. Union Pac. R. Co.*, No. 00-2043-CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001).

[38]*Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304-EEO, 1996 WL 397567, at *6 (D. Kan. July 11, 1996).

[39]Doc. 109–2 at 6.

[40]*Id.*

modified the temporal scope of Request No. 67, thus triggering its burden to show specifically

how the request is overly broad or unduly burdensome, and Judge James committed error by

refusing to consider this argument or evidence on reconsideration.  Again, the Court disagrees.

Union Pacific chose to couch its objection to Request No. 67 in general terms, with no

evidentiary support or affidavit.  Any second chance to come forward with such evidence

occurred when Plaintiffs moved to compel, not after Judge James overruled its objection.

Because a motion to reconsider is not a second opportunity for the losing party to make its

strongest case, to rehash arguments, or to dress up arguments that previously failed,[41] the court

did not abuse its discretion in denying Union Pacific's motion to reconsider.

Even if Union Pacific is correct, however, it has not shown that Request No. 67 is unduly

burdensome.  A party asserting an unduly burdensome objection to a discovery request has "the

burden to show facts justifying [its] objection by demonstrating that the time or expense

involved in responding to requested discovery is unduly burdensome."[42]  Additionally, the

objecting party must show "not only undue burden or expense, but that the burden or expense is

unreasonable in light of the benefits to be secured from the discovery."[43]  This imposes an

obligation "to provide sufficient detail in terms of time, money and procedure required to

produce the requested documents."[44]  Any objections that discovery is unduly burdensome must

contain a factual basis for the claim, and the objecting party must usually provide an "affidavit or

---

[41]*Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994).

[42]*Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011).

[43]*Id.*

[44]*Id.*

other evidentiary proof of the time or expense involved in responding to the discovery request."[45] The "mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship . . . to the party for whom discovery is sought does not itself require denial of the motion."[46]

In his Declaration, James Foxx attests that Union Pacific has not used any version of its "Accident Investigation Guidelines" that may have been in effect from the mid-1980's to July 2004 for nearly a decade.[47]  During the requested time period, the manuals "were active documents that were periodically modified," and there were different "versions" of the manuals over this approximate twenty-year period of time.[48]  Foxx states that "[b]ecause of the manner in which the [manual] was used, Union Pacific has no version control over the [manuals] from the mid-1980's to 2004," and that "Union Pacific does not have each and every varying version of the subject [manual]."[49]  He states that "[i]t would be extremely challenging, if not impossible, to comprehensively respond to the request seeking 'each and every' version of the [manual], "and "[e]ven attempting to do so would involve considerable burden and expense."[50]

The Court agrees with Plaintiffs that Union Pacific attempts to "oversell" the burden of producing these manuals.  Notably absent from Foxx's Declaration is that no version of the manuals exist, only that it would be "challenging" to identify and produce each manual.  Clearly,

---

[45]*Id.*

[46]*Snowden By and Through Victor v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332–33 (D. Kan. 1991).

[47]Doc. 105, Ex. A at 3.

[48]*Id.*

[49]*Id.*

[50]*Id.*

at least two versions of the manual have been produced before, as specifically referenced and discussed in the *New York Times*—the version that embodied Walsh's "new philosophy," and the revised version issued after his departure.  Union Pacific states that there were numerous versions of the manual beyond then until 2004, but does not identify which versions it has been able to produce, only that it would be difficult to provide "each and every" version.  Foxx states only that it would be difficult, and involve "considerable" burden and expense to track down the manuals.  Thus, Union Pacific has not met its "obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure to produce the requested documents."[51]

### *Preemption and Stay*

Finally, Union Pacific argues that Judge James erred by denying its request to stay any final determination on the merits of the production of the manuals until such time as this Court rules on Union Pacific's Motion for Summary Judgment, in which it urges that Plaintiffs' negligence claims are preempted by federal regulations or otherwise fail as a matter of Kansas law.  Contemporaneous with this Order, the Court has issued a Memorandum and Order granting and denying Union Pacific's motion in part; while Plaintiffs' claim of negligence based on inadequate warning devices is preempted by the FRSA, their unusually dangerous crossing claim is not.[52]  The Court further denied Union Pacific's motion for summary judgment urging this surviving claim was barred by the statute of repose.[53]  Accordingly, Union Pacific's objection is

---

[51]*Id.*

[52]Doc. 156.

[53]*Id.*

moot.

      **IT IS THEREFORE ORDERED BY THE COURT** that Defendant Union Pacific's Motion for Review of Magistrate Judge's Orders (Doc. 133) is **DENIED**.  Defendant shall provide to Plaintiffs a privilege log that provides sufficient information to allow Plaintiffs to assess the claimed privileges with respect to documents responsive to Plaintiffs' Request for Production No. 67, **within fourteen (14) days of the date of this Memorandum and Order.**

      **IT IS FURTHER ORDERED** that Defendant shall provide to Plaintiffs those documents not claimed as privileged that are responsive to Plaintiffs' Request for Production No. 67, **within fourteen (14) days of the date of this Memorandum and Order.**

      **IT IS SO ORDERED.**

Dated: January 5, 2015

                        S/ Julie A. Robinson
                        JULIE A. ROBINSON
                        UNITED STATES DISTRICT JUDGE